**IN THE UNITED STATES DISTRICT COURT FOR**
**DISTRICT OF NEBRASKA**

| | |
|---|---|
| Peter Anaradian<br>EmpowerRide LLC<br><br>        *Plaintiff,*<br><br>v.<br><br><br>Wonderfold Corporation<br><br>   *Defendants*. | **Case No.**<br><br>**COMPLAINT FOR DECLARATORY**<br>**JUDGMENT OF NON-INFRINGEMENT**<br>**OF U.S. DESIGN PATENT NO. D955,301** |

Plaintiffs Peter Anaradian and EmpowerRide LLC ("Plaintiffs"), by and through its undersigned counsel, brings this Complaint against Defendant Wonderfold Corporation ("Defendant"), and alleges as follows:

**NATURE OF THE ACTION**

1. This is a civil action for declaratory relief arising under the patent laws of the United States, 35 U.S.C. § 1 et seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

2. Plaintiffs seeks a judicial declaration that its product design and commercial embodiment do not infringe U.S. Design Patent No. D955,301 (the "'301 Patent"), which Defendant has asserted against Plaintiffs.

3. This action arises from a real, immediate, and justiciable controversy between the parties concerning alleged infringement of the '301 Patent, which has placed Plaintiffs under a cloud of legal uncertainty and has interfered with Plaintiffs' business operations.

4. Plaintiffs brings this action to resolve that controversy, eliminate uncertainty, and confirm its lawful right to design, manufacture, market, and sell its products free from Defendant's unfounded accusations.

**THE PARTIES**

5. Plaintiff Peter Anaradian is an individual citizen of the United States residing at 18874 Patrick Ave, Elkhorn, NE 68022.

6. Plaintiff EmpowerRide LLC is a Limited Liability Corporation organized and existing under the laws of the State of Nebraska with its principal place of business at 18874 Patrick Ave, Elkhorn, NE 68022.

7. Plaintiffs are engaged in the design, development, manufacture, and sale of mobility and transport-related products, including adaptive carriage systems and related equipment.

8. Plaintiffs are the owner of U.S. Design Patent No. D1,047,781 (the "'781 Patent"), which claims an ornamental design for an invalid carriage.

9. Defendant Wonderfold Corporation is a corporation organized and existing under the laws of the State of California with its principal place of business at 5769 Martin Road, Irwindale, CA 91706.

10. Defendant purports to own the '301 Patent and has asserted rights under that patent against Plaintiffs.

11. Defendant has engaged in conduct indicating an intent to enforce the '301 Patent against Plaintiffs, including but not limited to communications, threats, or assertions directed toward Plaintiffs and/or their business.

12. Defendant has engaged in affirmative enforcement conduct directed toward Plaintiffs, including cease-and-desist communications and threats of litigation, demonstrating a concrete intent to enforce the '301 Patent against Plaintiffs.

**JURISDICTION AND VENUE**

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), because this action arises under the patent laws of the United States.

12. This Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202.

13. An actual and justiciable controversy exists between Plaintiffs and Defendant because Defendant has asserted that Plaintiffs' product infringes the '301 Patent or has engaged in conduct that creates a reasonable apprehension of such an assertion.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiffs resides in this District and/or because a substantial part of the events giving rise to this action occurred in this District.

15. This Court has personal jurisdiction over Defendant because Defendant has purposefully directed enforcement-related activities toward this District and has sufficient minimum contacts such that the exercise of jurisdiction comports with due process.

**THE ASSERTED DESIGN PATENT**

16. Defendant claims ownership of U.S. Design Patent No. D955,301, titled "Stroller."

17. A true and correct copy of the '301 Patent is attached as **Exhibit A**.

18. The '301 Patent claims the ornamental design of a stroller as shown and described in the patent's figures.

19. The scope of a design patent is defined by its drawings, which depict the claimed ornamental appearance.

20. The '301 Patent depicts a stroller wagon design characterized by a soft-sided rectangular body, textile or mesh side panels, an open-top configuration, and a padded upper rim supported by a four-wheel structure.

21. The overall visual impression conveyed by the '301 Patent is that of a low-profile, fabric-based consumer stroller wagon, emphasizing a soft enclosure, open interior, and simplified handle-driven mobility structure.

### PLAINTIFFS' PRODUCT AND DESIGN

22. Plaintiffs' designs, manufactures, and sells a mobility device. Representative images of the Plaintiffs' Products are attached as **Exhibit B**.

23. Plaintiffs are also the owner of U.S. Design Patent No. D1,047,781, which claims the ornamental design of an invalid carriage. A true and correct copy of the '781 Patent is attached as **Exhibit C**.

24. The Plaintiffs' products embody, or is consistent with, the design claimed in the '781 Patent.

25. Plaintiffs' product is visually and structurally characterized by a combination of dominant ornamental features, including:

    (a)   a rigid and visibly exposed frame structure;

    (b)   a curved canopy or hood spanning the upper portion of the carriage;

    (c)   projecting side rails or lateral support handles;

    (d)   mounted external components, including a cylindrical medical-support element;

    (e)   a vertically oriented and reinforced support configuration; and

    (f)   an overall appearance consistent with an adaptive or medical mobility carriage rather than a conventional consumer stroller wagon.

28. The overall visual impression of the Plaintiffs' products is materially different from that of the '301 Patent.

29. The overall visual impression of Plaintiffs' product is that of a specialized adaptive mobility carriage designed for medical or assistive use, which is fundamentally distinct from the consumer stroller-wagon appearance depicted in the '301 Patent.

## PROSECUTION HISTORY AND PRIOR ART CONTEXT

30. During prosecution of the '781 Patent, the United States Patent and Trademark Office expressly cited and considered the '301 Patent as prior art.

31. The '781 Patent and the '301 Patent were examined by the same USPTO examiner, Charles D. Hanson.

32. After reviewing the '301 Patent and other prior art, the USPTO determined that Plaintiffs' design was patentably distinct and allowed the '781 Patent to issue.

33. This prosecution history confirms that the designs present materially different overall visual impressions and that the scope of the '301 Patent is necessarily limited in view of the prior art considered by the Office.

## CROWDED FIELD OF STROLLER WAGON DESIGNS

34. The stroller wagon market is highly competitive and includes numerous products sharing similar general configurations.

35. Multiple manufacturers, including Jeep, Keenz, Baby Trend, and Radio Flyer, offer wagon-style stroller products with rectangular bodies, four-wheel configurations, and fabric enclosures.

36. These similarities reflect common design themes within a crowded field of prior art.

37. As a result, the scope of the '301 Patent is necessarily narrow and limited to the specific ornamental appearance depicted in its drawings.

## SELECTIVE ENFORCEMENT

38. Despite the widespread presence of similar wagon-style products in the marketplace, Defendant has selectively targeted Plaintiffs.

39. Defendant has not pursued enforcement actions against numerous third-party manufacturers offering visually similar stroller wagon products.

40. This selective enforcement further demonstrates that the '301 Patent cannot reasonably be interpreted to cover the general concept of stroller wagons.

## ACTUAL CONTROVERSY

34. Defendant has issued cease-and-desist communications asserting that Plaintiffs' product infringes the '301 Patent and has threatened legal action.

35. These actions have created a real, immediate, and substantial controversy between the parties regarding infringement.

36. Defendant's conduct has disrupted Plaintiffs' business operations and created uncertainty regarding Plaintiffs' legal rights.

37. Plaintiffs deny infringement and seeks judicial resolution of this dispute.

## LEGAL STANDARD FOR DESIGN PATENT INFRINGEMENT

38. Design patent infringement is determined under the "ordinary observer" test.

39. Under this test, infringement exists only if, in the eye of an ordinary observer familiar with the prior art, the accused design is substantially the same as the patented design.

40. The analysis focuses on the overall visual impression of the designs as a whole, rather than isolated features.

41. Differences in dominant ornamental features are controlling in determining non-infringement.

42. Where the prior art field is crowded, even relatively modest differences are sufficient to preclude a finding of infringement.

## NON-INFRINGEMENT OF THE '301 PATENT

### A. Materially Different Overall Visual Impressions

44. The '301 Patent presents a soft-sided stroller wagon design with a low-profile rectangular body, fabric side panels, and an open-top configuration.

45. Plaintiffs' product presents a structurally distinct design characterized by a rigid frame, a canopy-covered top, and a more vertical and apparatus-like configuration.

46. The presence of the canopy alone fundamentally alters the silhouette and overall visual impression of the Plaintiffs' Product.

47. The Plaintiffs' product does not resemble the open, fabric-based wagon configuration depicted in the '301 Patent.

48. These differences are immediately apparent to an ordinary observer.

49. The presence of a prominent canopy, rigid structural framing, and mounted external components in Plaintiffs' product fundamentally alters its silhouette and visual identity, distinguishing it from the soft-sided, open-top stroller wagon depicted in the '301 Patent.

### B. Dominant Ornamental Differences

49. The canopy in the Plaintiffs' product is a dominant visual feature that is entirely absent from the '301 Patent.

50. The rigid frame structure of the Plaintiffs' product contrasts sharply with the soft fabric enclosure of the '301 Patent.

51. The Plaintiffs' product includes prominent external components and mounted elements that are not present in the '301 Patent.

52. The side rails and structural supports of the Plaintiffs' product contribute to a distinct visual identity.

53. These differences define the overall appearance of the Plaintiffs' product and distinguish it from the claimed design.

**C. Side, Front, and Rear-View Distinctions**

54. The side profiles of the two designs differ substantially in silhouette, structure, and feature arrangement.

55. The front views differ in geometry, with the Plaintiffs' product presenting a structured, framed appearance rather than a soft panel.

56. The rear views differ in that the Plaintiffs' product includes a canopy and structural supports, whereas the '301 Patent presents a simpler wagon configuration.

57. These differences reinforce the conclusion that the designs are not substantially the same.

**D. Similarities Are Limited and Non-Controlling**

58. Any similarities between the designs are limited to general characteristics common in the field, such as the presence of wheels and a central body.

59. These shared features are not sufficient to establish infringement because they do not define the patented ornamental design.

60. The similarities are outweighed by the numerous and substantial differences.

**E. No Likelihood of Deception**

61. An ordinary observer familiar with prior art would not mistake the Plaintiffs' product for the design claimed in the '301 Patent.

62. The differences in overall visual impression are significant and readily perceptible.

63. Accordingly, the Plaintiffs' product does not infringe the '301 Patent.

64. Taken as a whole, the differences between the designs are substantial, readily perceptible, and dispositive under the ordinary observer test. The Accused Product does not appropriate the ornamental appearance claimed in the '301 Patent and therefore does not infringe.

## COUNT I – DECLARATORY JUDGMENT OF NON-INFRINGEMENT

64. Plaintiffs incorporate paragraphs 1–63.

65. An actual controversy exists between Plaintiffs and Defendant.

66. Plaintiffs have not infringed and does not infringe the '301 Patent.

67. Plaintiffs are entitled to a declaratory judgment of non-infringement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Declare that Plaintiffs' Accused Product does not infringe U.S. Design Patent No. D955,301;

B. Enter judgment in favor of Plaintiffs;

C. Award Plaintiffs their costs and attorneys' fees as permitted by law; and

D. Grant such other relief as the Court deems just and proper.


Dated: March 18, 2026

Respectfully submitted,

/s/ Nitin Kaushik
Nitin Kaushik
1600 Perrineville Rd
Ste 2-400
Monroe Township, NJ 08831
Tel: 908-560-7265
Email: nkaushik@kaushiklex.com
*Counsel for Plaintiffs*